UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS R. PATTEE,

                              Plaintiff,

      v.                                                          3:05-CV-357
                                                                             (LEK/GJD)

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

CHARLES E. BINDER, ESQ., Attorney for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Attorney for Defendant

GUSTAVE J. DIBIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income benefits on October 17, 2003.[1] (Administrative Transcript ("T.") at 45-47, 286-291). The applications were denied initially on December 24, 2003 (T. 25-29), and plaintiff requested a hearing. (T. 33-34). A hearing was held before an Administrative Law Judge ("ALJ") on August 13, 2004. (T. 322-356).

In a decision dated October 4, 2004, the ALJ found that plaintiff was not

---

[1] Plaintiff filed two previous applications for disability, one on January 4, 2000, alleging disability beginning September 30, 1999. (T. 17). The second set of applications was on March 24, 2001, alleging disability beginning March 1, 2001. These previous applications were denied, and, according to the ALJ, plaintiff did not pursue any appeals from those denials. (T. 17).

disabled. (T. 14-23). On October 14, 2004, plaintiff requested review of the ALJ's decision. (T. 12-13). On December 23, 2004, plaintiff's counsel submitted a letter-brief in support of plaintiff's appeal. (T. 297-298). Attached to plaintiff's letter-brief to the Appeals Council were thirty pages of medical records. (T. 293-321).[2] On February 8, 2005, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (T. 5-9).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The Commissioner failed to properly evaluate the plaintiff's "'new and material' post-decision evidence." (Brief, p. 13).

(2) The Commissioner erred as a matter of law in assessing plaintiff's credibility. (Brief, p. 15).

(3) The Commissioner failed to adequately consider the impact of plaintiff's obesity and its impact on his ability to function. (Brief, p. 18)

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

## FACTS

**1.   Non-Medical Evidence and Testimony**:

Plaintiff, who was 45 years old at the time of the ALJ's hearing, has a

---

[2]Plaintiff's counsel also filed these records as Exhibit A with plaintiff's brief to this court. However there are three submissions in this case marked "Exhibit A." All the Exhibit A's appear to be documents submitted to the Appeals Council by plaintiff, however, only the thirty page Exhibit A appears in the administrative transcript. The Exhibit A that is part of the administrative transcript (T. 293-321) is the third Exhibit A in this action and will be referred to as Exhibit A-3. The other two Exhibit A's do not appear in the record, and will be referred to as Exhibit A-1 and A-2.

substantial work history. (T. 70). Plaintiff's main work in recent years was as a truck driver, (T. 70), driving tractor trailer trucks over long distances. (T. 329). When plaintiff began driving trucks during 1989 and the early 1990's, his work involved lifting and moving very heavy items, some exceeding one hundred pounds. (T. 74, 330). Plaintiff stopped work in June of 2004. (T. 326).

At the hearing on August 13, 2004, plaintiff testified that he has constant pain in his low back, neck, shoulders, arms, hips, and legs. (T. 331, 339). Plaintiff stated that his legs and feet ache after sitting for thirty or forty-five minutes, and that eventually his legs become numb. (T. 334). Plaintiff stated that although he can stand for ten to fifteen minutes, after thirty minutes, his back begins to ache. (T. 335). According to plaintiff, he is unable to lift more than ten pounds, and if he tries to do so, he gets pain in his arms and lower back, and eventually drops objects. (T. 337). Plaintiff testified that he is able to go shopping. (T. 343). He walks slowly and is able to drive short distances. (T. 343).

Plaintiff testified that although he completed the eighth grade,[3] testing shows that he can only read at a first grade level, and his mathematic ability is at the third grade level. (T. 64, 344). Plaintiff is approximately five feet, six inches tall and weighs 262 pounds. (T. 346, 348-349). Plaintiff testified that he sleeps for approximately two hours and then is awake for another two hours or more before

---

[3] The court notes that on plaintiff's "Disability Report," a form that plaintiff completes for the agency, indicates that the highest grade of school plaintiff completed was the "8th grade." (T. 64). At the ALJ hearing plaintiff stated the he "got to" the 9th grade. (T. 343). It is unclear whether this is an inconsistency or whether plaintiff's statement that he "got to" the 9th grade meant that he *completed* the 8th grade.

3

returning to sleep. (T. 339). According to plaintiff, the pain in his lower back, neck, arms, and legs wakes him up. (T. 340).

## 2.   **Medical Evidence:**

Plaintiff has had two main treating physicians for his physical problems. Dr. Anthony Cicoria, an orthopedic physician who treated plaintiff between 1996 and 2003, and Dr. Arthur Ticknor, who treated plaintiff from 2000[4] through 2004. (T. 62, 176-187). Dr. Cicoria is affiliated with a group known as the Orthopedic Institute of Central New York ("OICNY"). (T. 235, 147-150, 151-162). When plaintiff visited Dr. Cicoria during 1999, 2000, 2002, and 2003, he was examined on many occasions by a physician's assistant named Melissa Tworkowski. (T. 161, 160, 151-159). According to plaintiff, he visited Dr. Cicoria every two to three months (T. 333), and visited Dr. Ticknor as needed, since Dr. Ticknor was plaintiff's family physician. (T. 176-187). Dr. Ticknor treated plaintiff for conditions such as high cholesterol (T. 176, 186); urology problems (T. 187, 211); gastroesophageal reflux disease (T. 104); and back problems (T. 187).

Although Dr. Ticknor commented on plaintiff's back problems in his reports, (T. 187), it appears that Dr. Cicoria was plaintiff's treating physician for his back and carpal tunnel impairments. (T. 147-149, 161-151). Dr. Cicoria's office ordered magnetic resonance imaging (MRI) testing and MRI's were performed during March of 2003. (T. 153-154). Dr. Cicoria's office notes show that plaintiff was "doing well"

---

[4] It appears from the plaintiff's "Disability Report" that the first time that plaintiff saw Dr. Ticknor was 1993, however, the administrative transcript contains Dr. Ticknor's reports beginning in 2000. (T. 176-87).

4

after surgery for a carpal tunnel release, (T. 159), and that Dr. Cicoria recommended physical therapy and weight loss to treat plaintiff's lumbar disease. (T. 159). The office notes also show that Dr. Cicoria recommended that plaintiff continue working during the year 2000. (T. 158).

On March 18, 2003, an MRI of plaintiff's cervical spine showed concentric spinal stenosis at the C6-7 level, secondary to posteriorly directed disc protrusion and spondylotic spurs, with bilaterally narrowed neuroforamin, and likely compression of the existing C7 nerve roots. (T. 154-55, 155). There was also a central and right paramedian disc protrusion at the C3-4 level, and the right neuroforamen was narrowed with likely compression of the existing right C4 nerve root. (T. 155). The doctor noted that there were other "lesser changes" as noted in the report. Finally, the report contained an addendum, stating that there appeared to be a moderate sized arachnoid cyst compressing the anterior aspect of the left temporal lobe, and the doctor recommended further MRI testing of the brain. (T. 155).

During June of 2003, Dr. Ticknor wrote notes that plaintiff "may return to work as OTR (over the road) driver with no restrictions." (T. 167, 262, 265). Dr. Ticknor wrote a similar note regarding plaintiff's ability to return to work during 2000. (T. 184). In July of 2003, Dr. Cicoria's office notes quote plaintiff as stating that he can live with his back problems. (T. 151). When examined by a physician's assistant at that time, plaintiff showed excellent strength in his upper musculature, and the notes reiterate that plaintiff is able to tolerate his lower back pain and lower radicular symptoms which are "***not that significant***". (T. 151)(emphasis added).

5

An independent medical exam was performed during November of 2003 by Dr. John Cusick. (T. 213-217). Dr. Cusick noted plaintiff's complaints of constant lumbar pain and numbness in his legs for the past six months. (T. 213). Dr. Cusick found that plaintiff was not in any distress and did not find any muscle spasm. (T. 214). His examination showed full range of motion in plaintiff's shoulders, but limited flexion in plaintiff's spine. (T. 214). Dr. Cusick diagnosed plaintiff as having degenerative arthritis in the cervical and lumbar spine, but expressed doubts about the veracity of plaintiff's responses to various tests based on inconsistencies in the test results. (T. 217).

During December of 2003, Dr. Cicoria examined plaintiff because of plaintiff's complaints of severe neck pain radiating into plaintiff's head causing numbness. (T. 225). Dr. Cicoria's notes indicate that plaintiff was referred to a neurologist. (T. 225). Dr. Ronnie Kanas, a neurologist, examined plaintiff during November of 2003 and treated plaintiff with medication (T. 248), and a cervical epidural steriod injection (T. 244). Dr. Kanas' office notes show that plaintiff's pain decreased with rest and medication. (T. 246).

Plaintiff's counsel sent copies of portions of medical records from plaintiff's treating physicians, and the file contains duplicates of the March 20, 2003 MRI. (T. 154, 313), and duplicates of records from both treating physicians (T. 226-247, 250-269). Since plaintiff's counsel appeared at the ALJ hearing and reviewed the exhibits (T. 324), it is unclear why plaintiff's counsel sent duplicate exhibits to the ALJ. This procedure does not assist the court in reviewing this case.

## DISCUSSION

**1.    <u>Disability Standard</u>**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to

7

perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

**2.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### 3. **Evidence Sent to the Appeals Council**

In this case, plaintiff's counsel submits Exhibits A-1, A-2, and A-3. Exhibit A-1 contains a cover-letter from plaintiff's counsel to the Appeals Council, dated January 26, 2005, together with a January 4, 2005 report from Dr. Ticknor. Plaintiff's Ex. A-1. Plaintiff's Exhibit A-2 contains another cover-letter from plaintiff's counsel to the Appeals Counsel, dated January 18, 2005, together with a January 4, 2005 "Spinal Impairment Questionnaire, completed by Dr. Ticknor. Plaintiff's Ex. A-2.

Exhibit A-3 is a cover-letter from plaintiff's counsel to the Appeals Council,

dated January 10, 2005, together with 30 pages of medical reports written by Dr. Cicoria. Plaintiff's Ex. A-3.  The court notes that Plaintiff's Exhibit A-3 was included in the administrative transcript. (T. 293-321).  Neither of the other exhibits appears to have been included in the administrative record.  Plaintiff argues that the regulations require the Appeals Council to consider "new and material" evidence. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).  Plaintiff also argues that the Appeals Council may have never received the evidence, and that the failure to consider this evidence warrants a remand.

The Second Circuit has specifically held that the "administrative record" includes new evidence that is submitted to the Appeals Council. *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996).  The Social Security regulations specifically provide that if the new evidence relates to a period before the ALJ's decision, the Appeals Council shall evaluate the entire record including the new and material evidence and then review the case if it finds that the ALJ's findings are contrary to the weight of the evidence. *Id.* (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)).

The issue in *Perez* was whether this new evidence became part of the administrative record if the Appeals Council denied review of the ALJ's decision, and the Second Circuit held that the evidence *did* become part of the record, regardless of whether the Appeals Council granted or denied review. *Id.* at 44-45.  In reaching this conclusion, the Second Circuit agreed with five other circuits, holding that the new evidence becomes part of the record, regardless of whether the Appeals Council grants or denies review. *Id.* at 45.

The court must also point out that the regulatory standard for "new evidence" presented to the Appeals Council is different from the statutory standard for a remand for "new evidence" under sentence six of 20 U.S.C. § 405(g). When a plaintiff presents "new and material" evidence to a district court that has never been presented to the Commissioner, the court may only remand for the Commissioner to consider the new and material evidence if there is "good cause" for the failure to incorporate the evidence into the record in a prior proceeding.[5] 20 U.S.C. § 405(g). The requirements in the regulations for the consideration of new evidence by the Appeals Council are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). There is no "good cause" requirement. *Id.* The Second Circuit specifically mentioned this distinction in *Perez*. 77 F.3d at 45.

Thus, if a claimant presents evidence to the Appeals Council, it becomes part of the record. *Perez, supra.* In this case, the problem is that only ***one*** of the three

---

[5] The Second Circuit has developed a three-part showing that is required to support a sentence six remand for "new and material evidence" pursuant to section 405(g). *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). First, the evidence must be "new" and not merely cumulative of what is already in the record. *Id.* (citing *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984)).
    Second, in order for the new evidence to be "material," it must be ***both relevant to the claimant's condition during the time period for which benefits were denied and probative.***" *Id.* (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)). The Second Circuit has also held that the concept of "materiality" requires a finding that there is a reasonable possibility that the new evidence would have influenced the Commissioner to decide the claimant's application differently. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). Finally, the plaintiff must show that there is good cause for failing to present the evidence earlier. *Lisa v. Secretary of the Dep't of Health & Human Services*, 940 F.2d 40, 43 (2d Cir. 1991)(quoting *Tirado*, 842 F.2d at 597).
    The regulatory standard includes the concept of "new and material" evidence, but does not include the "good cause" requirement.

11

exhibits that plaintiff appears to have submitted to the Appeals Council has been included in the record, and therefore, plaintiff argues that it is possible that the Appeals Council did not receive the evidence, and did not consider evidence that should have been included in the record, requiring a remand for proper consideration. Thus, the court must first determine whether the Appeals Council considered the evidence, and if so, whether that determination is supported by substantial evidence.

The ALJ's decision denying plaintiff benefits was issued on October 4, 2004, finding that plaintiff was not disabled on or before that date. (T. 23). Approximately, three months later, on January 4, 2005, Dr. Ticknor completed a spinal impairment questionnaire sent to him by plaintiff's counsel. Plaintiff's Ex. A-2. Exhibit A-2 shows that plaintiff's counsel forwarded the spinal impairment questionnaire to the Appeals Council on January 18, 2005. The Appeals Council ***specifically stated*** in its decision of February 8, 2005 that it had considered the "records from Arthur Ticknor, M.D. for November 26, 2004 through ***January 4, 2005*** ..." and concluded that Dr. Ticknor's information was " . . . new information . . . about a later time." (T. 6)(emphasis added). The Appeals Council further stated that this new information did not affect the ALJ's decision about whether plaintiff was disabled on or before October 4, 2004. (T. 6). Both Plaintiff's Exhibits A-1 and A-2 were dated ***January 4, 2005.***

Although plaintiff's brief states that it is unlikely that the Appeals Council considered this information, (Brief, p. 13 n.46), ***the record shows otherwise***. (T. 6). Clearly, the Appeals Council cited the records dated January 4, 2005, thus it appears

that the Appeals Council *did consider the evidence*. The court must then simply determine whether the Appeals Council's finding is supported by substantial evidence.

Plaintiff's brief accurately states that the regulations require the evidence submitted to the Appeals Council to be new, material, and relate to the period *on or before the ALJ's decision*. Plaintiff argues that Dr. Ticknor's spinal impairment questionnaire is new because Dr. Ticknor had not previously rendered an opinion about plaintiff's spinal impairment, and that it is material since it " ... offer[s] a reasonable explanation for Mr. Pattee's symptomatology ... ." Plaintiff's arguments are misplaced since the Appeals Council specifically reviewed this evidence and was correct that the evidence relates to a time well after the period in question which was disability prior to October 4, 2004.

More importantly however, this evidence is almost totally inconsistent with Dr. Ticknor's treating records which stated *several times* that plaintiff could return to work as a trucker with no restrictions. (T. 167, 184, 265). On June 3, 2003, Dr. Ticknor stated that plaintiff could return to his former work as a truck driver with no restrictions, and on February 16, 2004, Dr. Ticknor again released plaintiff to "work driving without restriction." (T. 167, 227). On July 8, 2003, the examining physician's assistant in Dr. Cicoria's office wrote that plaintiff stated that he could live with his back problems, and that he was able to tolerate his low back pain including radicular symptoms which are *not that significant* (emphasis added). (T. 151).

Dr. Arthur Ticknor was plaintiff's family physician, and while his office records

do mention plaintiff's back problems, Dr. Ticknor usually treated plaintiff for conditions unrelated to his back, such as high cholesterol, skin lesions, urology problems, and gall bladder problems. (T. 178, 184, 176, 186, 207). If plaintiff's condition deteriorated as Dr. Ticknor seems to indicate, the plaintiff can file new applications indicating that his disability began when Dr. Ticknor examined him during January of 2005. The Appeals Council suggested that plaintiff re-apply if he believed that he became disabled subsequent to October 4, 2004.

This court finds that the Appeal's Council's decision is supported by substantial evidence.

### 4.   **Pain and Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)(quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged...." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

In this case, plaintiff argues that the ALJ made erroneous findings about plaintiff's credibility. The ALJ stated that plaintiff's complaints appeared to be exaggerated and disproportionate to his medical findings. The ALJ also cited the repeated times that he has been released by his own physicians to return to work. (T. 22). Both of plaintiff's treating physicians have stated that plaintiff could continue working. (T. 158, 227); and that he could return to work as a truck driver with no restrictions. (T. 167). There are no findings by the treating physicians of disabling

15

medical problems. These facts support the ALJ's credibility finding.

Plaintiff himself specifically stated during July of 2003 that he was able to tolerate his low back pain and could live with his back problems. (T. 151). An examining physician found inconsistent results based upon tests of plaintiff's range of motion and expressed doubts about plaintiff's complaints. (T. 214). The record also contains notes from Dr. Kanas, who stated that plaintiff's pain decreases with rest and use of medication. (T. 246). Plaintiff testified that he is using two medications (Bextra and Hydrocodone) (T. 345, 353), and does not have any side effects from these medications.

The ALJ also supported his credibility determination on the fact that plaintiff has filed "multiple prior applications" and has returned to work after the applications were denied. (T. 21). Plaintiff argues that his work from May to June 2004 was an "unsuccessful work attempt" and does not show that plaintiff was able to engage in substantial gainful activity. (Brief, p. 16).

Plaintiff points to one instance in which he worked only for "less than three months" in 2004, and argues that the ALJ should have considered this an "unsuccessful work attempt" and should not have used this to undermine plaintiff's credibility. Plaintiff appears to be referring to a time after Dr. Ticknor released plaintiff to go back to work with no restrictions in February of 2004. (T. 227). The court would first point out that the ALJ appears to be referring to plaintiff's return to work after the denials of his *prior applications* for benefits, alleging disability beginning in 1999 and later in 2001. After the denials of his prior applications,

16

plaintiff states in a form that he completed on June 14, 2004 that he worked in his regular occupation from 2000 to April of 2004. (T. 99). He makes some more specific statements in a "Work History Report" dated November 14, 2003. (T. 77). The ALJ was *not* referring to plaintiff's alleged "unsuccessful work attempt" in determining that plaintiff could work, rather the ALJ was stating that after plaintiff's previous applications were denied, plaintiff went back to work for substantial periods of time, and *this* affected his credibility. Plaintiff's argument about an "unsuccessful work attempt" in opposition to the ALJ's credibility finding is misplaced.

Plaintiff's statements about the interruptions in his work are inconsistent. Plaintiff stated in November of 2003 that he worked from July 2003 until October 2003. (T. 77). In his hearing testimony, plaintiff stated that he stopped working in July of 2003. (T. 325-27). A similar inconsistency appears about plaintiff's work in 2004. In June 2004, plaintiff stated that he worked from July of 2002 to April 2004. (T. 99). This statement is inconsistent with plaintiff's testimony that he *returned* to work in May of 2004 after stopping in July of 2003. (T. 325-27).

Plaintiff argues that the ALJ should not have considered plaintiff's ability to work prior to the disability onset date that he is *currently* alleging. The ALJ was not simply "using" plaintiff's ability to work prior to his alleged onset date as a "detriment" to plaintiff's credibility. Rather, the ALJ was commenting that plaintiff had prior applications for disability, and that he returned to his regular job after the applications were denied. The fact that plaintiff returned to his prior work for a substantial period of time after he applied for and was denied disability benefits was

17

only one basis for the ALJ's credibility finding and does not detract from the substantial evidence supporting the ALJ's finding.

### 5. Combination of Impairments and Obesity

It is well-settled that the combined effect of all plaintiff's impairments must be considered in determining disability. *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995). The ALJ must evaluate the combined effect of plaintiff's impairments on her ability to work, "***regardless of whether every impairment is severe.***" *Id.* (citing *inter alia DeLeon v. Secretary of HHS*, 734 F.2d 930, 937 (2d Cir. 1984)).

Plaintiff argues that the ALJ did not consider the impact of plaintiff's obesity on his ability to function. Plaintiff has not claimed obesity as part of his disability. The record clearly shows that plaintiff has been overweight for many years and functioned at his higher weight for many years. (T. 214, 247, 250, 282). During the hearing in August of 2004, plaintiff testified that he weighed 262 pounds, which was considerably less than his weight at other times. (T. 348). Dr. Ticknor's notes characterize plaintiff as obese in 2001 (T. 182) when plaintiff was working. The only restriction placed on plaintiff was to avoid unloading trucks. (T. 183). Dr. Ticknor found plaintiff able to return to his work in October 2000 (T. 184); June 3, 2004 (T. 265); and June 25, 2003 (T. 167, 262). Plaintiff was overweight during all of these years. There is no support in the record for plaintiff's argument that the ALJ failed to consider plaintiff's obesity since it has *not* interfered with his ability to perform his job as a truck driver.

**6.     Residual Functional Capacity (RFC)**

In order to determine that plaintiff could return to his former occupation, the ALJ determined at step four of the evaluation process that plaintiff had the RFC to perform a full range of light and sedentary work. (T. 20, 23). Although the ALJ did not specifically state in his decision that plaintiff's prior work was light or sedentary, plaintiff himself testified that he would sit and drive for approximately six to eight hours per day, with the rest of his time spent resting and stretching. (T. 329). Plaintiff also testified that although at the beginning of his career, he would help unload the freight and would have to lift up to seventy five pounds, as the years went on, he did not touch any freight. (T. 330). Thus, basically, his job involved sitting, short periods of standing, and presumably pushing and pulling of foot and hand controls.

Because plaintiff was often released by his doctors to perform his prior work without restriction, the ALJ found that plaintiff could perform the functions required by his prior work, however, the ALJ also found in the alternative at step five, that if plaintiff had the RFC for light and sedentary work, the Medical Vocational Guidelines would still dictate a finding that plaintiff was not disabled. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Rules 202.17 (light work), 201.18 (sedentary work). Based on all the evidence of record, there is absolutely no evidence that plaintiff does not have the RFC for light and sedentary work, thus, even if plaintiff could not return to his prior work, he would not be found disabled under the guidelines. The ALJ's finding is therefore, supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and the complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 30, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

20